UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ELLEN JANE KUTTEN,                      )
individually and on behalf              )
of her daughters and                    )
                                        )   Case No. 4:04-CV-244 CAS
MARY ANN ARNOLD and                     )
ELSIE MAHLER SCHARFF,                    )
                                        )
on behalf of themselves                 )
and all others similarly situated,      )
                                        )
            Plaintiffs,                  )
v.                                      )
                                        )
BANK OF AMERICA, N.A. and               )
BANK OF AMERICA CORPORATION,            )
                                        )
            Defendants.                  )

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' CLASS CLAIMS AND THE INDIVIDUAL CLAIMS OF
PLAINTIFF KUTTEN FOR LACK OF SUBJECT MATTER JURISDICTION**

All class claims of Plaintiffs' Second Amended Complaint brought by Plaintiffs Arnold

and Scharff – the remaining class representatives – should be dismissed for lack of subject matter

jurisdiction.  As set forth herein, for the same reasons that this Court dismissed a putative class

action in Reinke v. Bank of America, N.A., No. 4:04-CV-1758 (CAS), 2005 WL 3454428 (E.D.

Mo. Dec. 16, 2005), this action likewise cannot be maintained in this Court.  No individual class

representative here meets the $75,000 minimum required for federal diversity jurisdiction.

Rather, the class representatives fall far short of amassing $75,000 in compensatory damages.

And, their requests for injunctive relief offer no contribution to the jurisdictional minimum, as the

class representatives either lack standing to request such relief; the relief itself could not be

awarded by this Court; or, it has no value.  Finally, the class representative's punitive damage

claim, as this Court properly determined in Reinke, does not get the class representatives over the

critical hurdle necessary to get their class claims in Federal Court.  Accordingly, all class claims

of Plaintiffs' Second Amended Complaint should be dismissed for lack of subject matter

jurisdiction.

1

Additionally, as to Plaintiff Kutten, who has withdrawn as a class representative and is only asserting individual claims in this action, her claims likewise fail to reach the jurisdictional minimum.  And, even if they did (which they do not) her individual claims cannot save the proper dismissal of the class claims.

## BACKGROUND

### A.    Procedural History

In February 2004, Ellen Jane Kutten filed this putative class action against the Defendants, Bank of America, N.A. (the "Bank") and Bank of America Corporation ("BAC").  Plaintiff Kutten originally filed this action on behalf of herself and her daughters, Louise and Alessandra, as well as on behalf of the putative class and a Missouri sub-class.  In the complaint, Plaintiff Kutten alleged that Defendants breached various purported fiduciary and contractual duties with respect to the administration of her trust accounts.

In the Spring of 2004, a First Amended Complaint was filed adding Mary Ann Arnold, a Nevada resident, as a named plaintiff on behalf the putative class and a California sub-class.[1] When various issues arose after a year of discovery, Plaintiffs moved for leave to amend their complaint a second time in March 2005.[2]  In the Second Amended Complaint, Plaintiff Kutten

---

[1]    Plaintiff Arnold had previously filed a putative class action on behalf of herself and others similarly situated in federal court in California in November 2003.  In that action, Ms. Arnold asserted the same causes of action asserted in this action.  At a status conference in March 2004 before the Court in California, the Court pressed Plaintiff Arnold's counsel, the same counsel here, because it did not see how an action, based upon individual trust instruments, could be certified as a class.  See Ex. 1 at 7. (Court Transcript).  The Court set a tight briefing schedule, and Ms. Arnold, through the same counsel here, promptly moved to voluntarily dismiss that action, which the Court granted.  Subsequently, Plaintiff Arnold refiled her claims, along with Plaintiff Kutten, in this action pending in Missouri.

[2]    Notably, Plaintiffs moved for leave to amend in the face of the agreed date for Plaintiff Kutten's deposition and various facts which arose in discovery that clearly contradicted  Plaintiff Kutten's allegations.  For example, Plaintiffs originally alleged that Ms. Kutten never received any notice of the investment change from common trust funds to Nations Funds.  See First Amended Complaint ¶ 8.  Likewise, Plaintiff Kutten alleged that "all similarly affected beneficiaries were wrongly denied notice and the right to object to such transferred fiduciary capacities." Id. at ¶ 9.  However, discovery proved these allegations to be false.  Indeed, not only did Plaintiff Kutten receive notice of the investments, as co-trustee, she approved the exchange in writing.  Confronted with the fact that the allegations were false, Kutten then claimed in a

Continued on following page

withdrew as a class representative and instead sought to pursue claims against the Defendants individually.  Plaintiff Arnold, the remaining class representative, was then joined by Elsie Mahler Scharff, a Missouri resident, who asserted claims on behalf of herself as well as the putative class and Missouri sub-class.  Thus, only two class representatives are before this Court on behalf of the putative class:  Plaintiffs Arnold and Scharff.

The Second Amended Complaint asserts that jurisdiction is based on 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 1367 (supplemental jurisdiction).  See Second Amended Complaint ¶ 14.  Plaintiffs' claims center on the recovery of fees in connection with the investment of some of their "fiduciary assets" in Nations Funds.  Plaintiffs claim that the Bank charged "substantial fees and expenses to the Nations Funds for their purported services…which have had and continue to have a substantial cost to the Kutten Trusts, the Crowley Trust, [and to] the Scharff Trusts . . ."  See Second Amended Complaint ¶ 20.  Plaintiffs further allege that investments in proprietary mutual funds was an "engineered scheme" pursuant to which the "Bank was able to abdicate many of its traditional fiduciary responsibilities, functions and services to beneficiaries of fiduciary accounts" and these actions "resulted in higher total direct and indirect expense charges to the fiduciary accounts (such as those of the Kutten, Crowley, and Scharff Trusts) ... ."  See Amended Complaint ¶ 21(b).  Plaintiffs broadly allege that "the amount in dispute exceeds $75,000 exclusive of interest and costs." Id. at ¶ 14.

Included among the fifteen counts of the Second Amended Complaint are claims for breach of fiduciary duty, breach of contract, unjust enrichment, and violations of various California and Missouri statutes.  These claims are brought on behalf of Plaintiffs Arnold and

---

Continued from previous page

Declaration filed with this Court that she was personally defrauded into signing the authorizations during individual conversations with her trust officer and others.  Faced with these inconsistencies, Kutten refused to appear for her deposition and instead moved for leave to withdraw her class claims and to limit the scope of her deposition.  Moreover, Plaintiffs admitted that the case could not be certified as a class action because individual issues as to Plaintiff Kutten's claims would predominate.  See Ex. 2 at 2 (Plaintiffs' Motion for Leave to Amend.)

3

Scharff on behalf the putative class.  Each count incorporates and reasserts all of the preceding allegations in the complaint.  In the prayer for relief, Plaintiffs Arnold and Scharff, respectively, request compensatory and punitive damages on behalf of the putative class and Missouri and California sub-classes.  Additionally, Plaintiffs Arnold and Scharff seek various entries of judgment including, *inter alia*, an entry "enjoining the Bank from opposing any petition filed by any member of the Class or Missouri or California Sub-Classes seeking the removal of the Bank as corporate fiduciary and requiring the Bank to pay for all legal fees and expenses incident thereto including its own."  <u>See</u> Second Amended Complaint at 57.  Plaintiff Kutten seeks compensatory and punitive damages on behalf of herself and her daughters as well as various entries of judgment and injunctive relief regarding her claims.  Each of the named Plaintiff's claims is discussed in detail below.

**B.**      <u>**The Allegations of the Class Representatives**</u>

      **1.**      ***Plaintiff Arnold***

John J. Crowley, a resident of the State of California, established a trust pursuant to his Last Will and Testament ("Crowley Trust") for the benefit of his granddaughter, Mary Ann Arnold.  In his Will, he appointed the Bank as trustee and directed that the Bank "shall manage the Trust Estate and may sell, lease for terms either within or beyond the duration of the trust, loan, re-loan, invest and re-invest the Trust Estate or any part thereof in any kind of property which men of prudence, discretion and intelligence acquire for their own account, specifically including but not by way of limitation, corporate obligations of every kind and preferred or common stock."  The Will also provided a trust for Mary Ann Arnold that would consist of one-fourth of the Crowley Estate.  The Bank continues to serve as trustee for the Crowley Trust and Ms. Arnold remains a customer of the Bank.  Plaintiff Arnold has never sought the removal of the Bank as trustee of the Crowley Trust.

Following the death of John J. Crowley, the Bank invested one-fourth of the assets from the Crowley Estate pursuant to the terms of the Crowley Trust for the benefit of Plaintiff Arnold.  These assets were invested in common trust funds until 2002 and in various Nations Funds mutual

funds from 2002 to the present.  As previously noted, Plaintiff Arnold, like Plaintiff Scharff, alleges that she suffered monetary harm because the expense charged to the Trust for investments in Nations Funds was purportedly greater than those charged if the funds remained in common trust funds.  Giving Plaintiff Arnold the benefit of all favorable inferences, the greatest expense that could have been charged to the Trust for investments in Nations Funds falls far short of the jurisdictional minimum.

Indeed, for purposes of this motion, to calculate the total possible fees related to these investments, one can take the highest market value[3] invested in each fund during a given year and multiply it by the fund's ***maximum*** corresponding expense ratio as published in the prospectus, subtract any fee credit,[4] and arrive at the ***maximum*** fees that could possibly have been charged.  See Ex. 3 for detailed calculations.  Under this calculation, which intentionally excludes important mitigating factors, such as Plaintiff Arnold's greater return on investments in Nations Funds, the greatest amount of net fees that could have been charged to the Crowley Trust in connection with the Nations Funds investments totals $4,847.  Thus, giving all credence to Plaintiff Arnold's claims, the maximum amount of fees at issue is less than $5,000.

### 2. *Plaintiff Scharff*

Nicholas Scharff established the Nicholas Scharff Marital Trust and the Nicholas Scharff Residuary Trust ("Scharff Trusts") pursuant to the Nicholas Scharff Revocable Trust Indenture.  In the trust instrument, Nicholas Scharff appointed several co-trustees:  the Bank, as corporate co-

---

[3]     The highest market values invested in each fund during each year were used to calculate the fees in a manner most favorable to the Plaintiffs.  For example, a Plaintiff may have had $20,000 invested in a particular fund at the beginning of a year and $200,000 at the end of that year.  For purposes of these fee calculations and to give all credence to Plaintiffs' claims, the fees charged in connection with that investment would be based on the higher market value of $200,000.

[4]     Although not required in most states, the Bank provides a voluntary fee credit for trust assets invested in Nations Funds.  The Nations Funds fee credits were subtracted from the total possible fees, resulting in the maximum net fees that could have been (but were not actually) charged for these investments.

trustee; Pauli Scharff, his wife, as a co-trustee; Charles Lowenhaupt, an attorney, as a co-trustee; and Edward Levis, Jr, a stock broker, as a co-trustee.  Plaintiff Elsie Mahler Scharff, one of Nicholas Scharff's three daughters, is a beneficiary of the Nicholas Scharff Residuary Trust and a remainderman of the Nicholas Scharff Marital Trust.[5]  The Bank no longer serves as corporate co-trustee of the Scharff Trusts and Plaintiff Scharff has not been a customer of the Bank since January 2005.

Notably, when the Bank did administer the trust accounts for which Plaintiff Scharff is a beneficiary from 1999 to 2005, these trust accounts were not invested in common trust funds and accordingly did not participate in a common trust fund conversion as alleged in the Second Amended Complaint.  After seeking and obtaining the approval for such investments from the various co-trustees appointed by Nicholas Scharff, the assets of the Scharff Trusts were invested in various Nations Funds from 1999 until the trust was transferred.

Using the same methodology as outlined above, the *maximum* amount of fees that could possibly have been charged to the Scharff Trusts through investments in Nations Funds would be only $12,947.  See Exhibit 3.  Indeed, for the Nicholas Scharff Marital Trust and the Nicholas Scharff Residuary Trust, after applying the Nations Funds fee credits, the maximum fees that could possibly have been charged in connection with the maximum amount invested in Nations Funds would be $5,125 and $7,822, respectively.  Thus, assuming *arguendo* that Plaintiff Scharff would be entitled to a refund of *all* of the fees associated with investments in Nations Funds, the total fees that could possibly be at issue here are less than $13,000.[6]

---

[5]    Although the Second Amended Complaint also alleges that Plaintiff Scharff is a beneficiary of the Pauli R. Scharff Revocable Trust, this assertion is inaccurate.  Pauli Scharff, Plaintiff Scharff's mother, established a grantor trust with the Bank; however, Plaintiff Scharff is not a beneficiary of that Trust.

[6]    Moreover, when asked at her deposition about what she believes she is entitled to recover from the claims brought on behalf of herself and as a class representative of the Missouri Sub-Class in this action, Plaintiff Scharff admitted that "I don't expect to pay anything or benefit by anything."  See Ex. 4 (Scharff Deposition Excerpt at 51-52.)  Such a concession that Plaintiff Scharff does not believe she is entitled to recover "anything" in this action confirms that she cannot satisfy the $75,000 amount in controversy requirement.

C.      **Plaintiff Kutten's Individual Allegations and Claims**

Joseph and Carolyn Kutten, Plaintiff Kutten's parents, established various trust accounts pursuant to three trust instruments:  the Third Amendment and Restatement of the Joseph Kutten Indenture of Trust; the Third Amendment and Restatement of the Carolyn J. Kutten Indenture of Trust; and the Joseph Kutten and Carolyn J. Kutten 1989 Grandchildrens' Trust (the "Kutten Trusts").  Plaintiff Ellen Jane Kutten is a beneficiary and/or co-trustee of these trusts.  Plaintiff Kutten's daughters, Louise and Alessandra, are beneficiaries of the Joseph Kutten and Carolyn J. Kutten 1989 Grandchildrens' Trust, for which Plaintiff Kutten also serves as the co-trustee.  The Kutten Trusts were transferred to a successor co-trustee in 2003 and are no longer administered by the Bank.

From 1997 to 2003, assets of the Kutten Trusts for which Plaintiff Kutten and her daughters are beneficiaries were invested in various Nations Funds.  Applying the same methodology outlined above, the *maximum* amount of fees that could possibly have been charged to the Kutten Trusts for this investment likewise fall below the jurisdictional minimum.  Indeed, for Plaintiff Kutten's trust, use of the highest market value of the assets invested in various Nations Funds and the corresponding annual expense ratio for each fund, and application of the fee credit actually provided, results in $4,706 in net fees.  Similarly, for Louise and Alessandra's trusts from 1997 to 2003, the fees, at their greatest maximum level possible, would be $4,923 and $4,926, respectively.  In sum, the maximum amount of fees that could possibly have been charged (but were not actually charged) to the Kutten Trusts during the time period at issue is $14,555.

## ARGUMENT

A.      **All Claims Asserted in this Case Should Be Dismissed Because this Court  Cannot Exercise Jurisdiction Over the Class Claims or Over Plaintiff Kutten's Individual Claims.**

District courts have original jurisdiction in civil actions where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.  28 U.S.C. § 1332(a)(1).  Federal Rule of Civil Procedure 12(b)(1) applies where the court must

determine whether the plaintiff can satisfy the jurisdictional requirement.  <u>Reinke v. Bank of America, N.A.</u>, 2005 WL 3454428 (E.D. Mo. Dec. 16, 2005) (citations omitted).  Under Federal Rule of Civil Procedure 12(h)(3), "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  <u>Id</u>. at *1; <u>See</u> <u>also</u> <u>James Neff Kramper Family Farm Partnership v. IBP, Inc.</u>, 393 F.3d 828, 831 (8th Cir. 2005).

"When a federal complaint alleges a sufficient amount in controversy to establish diversity jurisdiction, but the opposing party or the court questions whether the amount alleged is legitimate, the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence."  <u>Reinke</u>, 2005 WL 3454428, at *2.  "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims."  <u>Id</u>. (citations omitted).  Further, the "amount in controversy requirement is satisfied 'when a fact finder could legally conclude, from the pleadings and the proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000.'"  <u>Id</u>. (citations omitted).

In this case, as in the recently dismissed <u>Reinke</u> action, none of the claims in the Second Amended Complaint demonstrate that Plaintiffs' damages exceed $75,000 to satisfy the amount in controversy requirement of 28 U.S.C. §1332.

### 1.   *No Individual Plaintiff Has Compensatory Damages Which Exceed $75,000.*

      a.   Neither Plaintiff Arnold nor Plaintiff Scharff can individually <u>establish compensatory damages greater than $75,000.</u>

"In order for this Court to exercise federal jurisdiction, the Plaintiff(s) must demonstrate that at least one Plaintiff can satisfy the amount in controversy requirement."  <u>Id</u>. (citations omitted).  Thus, where neither putative class representative can individually meet the $75,000 amount in controversy requirement pursuant to 28 U.S.C. §1332(a), the Court lacks subject matter jurisdiction over the claims and must dismiss the class action.

Assuming for purposes of this Motion that Plaintiffs Arnold and Scharff's allegations have merit (which they do not), neither has asserted individual claims for which their compensatory damages exceed the minimum amount in controversy to invoke the jurisdiction of this Court.  As to Plaintiff Arnold, even if she would somehow be entitled to a refund of *all* of the mutual fund fees that could possibly have been charged for investment in Nations Funds, the maximum amount that could possibly be at issue is $4,847.  See Exhibit 3.  Likewise, even Plaintiff Scharff would somehow be entitled to a refund of *all* mutual fund fees that could possibly have been charged for her investment in Nations Funds – which she is not – the maximum amount that could possibly be at issue is $12,947.  Id.

Thus, because neither of the putative class representatives have individual claims for actual damages which satisfy the $75,000 amount in controversy requirement, this Court lacks diversity jurisdiction over any of the class claims.[7]

> b.   Plaintiff Kutten's individual claims do not exceed $75,000 and should be dismissed.

As noted, Plaintiff Kutten has abdicated her role as a putative class representative in this action and is not asserting any class claims.  Rather, Plaintiff Kutten is bringing only individual claims against the Defendants.  Her individual claims, as outlined in the Second Amended Complaint, fail to sufficiently allege facts which would support the amount in controversy required for jurisdiction.  Indeed, even assuming Plaintiff Kutten's claims have merit (which they do not), the total fees that could possibly have been charged to the Kutten Trusts are $14,555 – far less than $75,000.  See Exhibit 3.

---

[7]   For purposes of determining whether this Court has subject matter jurisdiction over the class claims brought by Plaintiffs Arnold and Scharff, Plaintiff Kutten's damages are irrelevant to the analysis.  Indeed, as most recently noted by the United States Supreme Court in Exxon Mobil Corp. v. Allapattah Servs., Inc., ____ U.S. ____, 125 S. Ct. 2611(2005), the supplemental jurisdiction provided under 28 U.S.C. § 1367 is only invoked "as long as the district court has original jurisdiction over the claims of at least one of the class representatives."  Id. at 2616.  Thus, the focus is on whether either Plaintiff Arnold or Plaintiff Scharff, individually, can reach the jurisdictional minimum.

9

### 2.     *Plaintiffs' request for punitive damages does not get them over the jurisdictional minimum.*

"[W]hen determining the amount in controversy, 'a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages.'"  Larkin v. Brown, 41 F.3d 387, 389 (8th Cir. 1994) (quoting Zahn v. International Paper Co., 469 F.2d 1033, 1034 n.1 (2d Cir. 1972), *aff'd*, 414 U.S. 291 (1973), *overruled on other grounds by* Exxon Mobil Corp., 125 S.Ct. 2611 (2005).)  This Court has previously applied this standard for evaluating punitive damage claims in a similar context in another action filed by the same Plaintiffs' counsel here -- Reinke v. Bank of America, N.A., 2005 WL 3454428 (E.D. Mo. Dec. 16, 2005).  The same holding that punitive damages were inappropriate in the Reinke action is applicable here.

As this Court recognized in Reinke, "under Missouri law '[p]unitive damages require a showing, by clear and convincing proof, of a culpable mental state on the part of the defendant, either by a wanton, willful or outrageous act, or reckless disregard for an act's consequences (from which evil motive is inferred)."  2005 WL 3454428, at *3 ("Punitive damages may be awarded for breach of a fiduciary duty upon a clear and convincing showing that the defendant acted with evil motive and reckless indifference to plaintiff's rights") (citations omitted).

Similarly, California law imposes a heightened standard for punitive damages requiring the plaintiff to show "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal.Civ.Code, § 3294(a).  Further, "[a] breach of a fiduciary duty alone without malice, fraud or oppression does not permit an award of punitive damages." Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co., 230 Cal.Rptr. 276 (1986).  The California courts have articulated that "[p]unitive damages are appropriate if the defendant's acts are reprehensible, fraudulent or in blatant violation of law or policy."  Tomaselli v. Transamerica Ins. Co., 31 Cal.Rptr.2d 433, 444 (Cal.Ct.App. 4 Jun 13, 1994).

Like the Reinke Amended Complaint, the Second Amended Complaint here (drafted by the same Plaintiffs' counsel), fails to sufficiently allege facts that Defendants are guilty of oppression, fraud or malice as required under California law or acted with an evil motive and

reckless indifference to Plaintiffs' rights as required by Missouri law.  The same conclusory allegations this Court held were inadequate to support a claim for punitive damages are again before the Court.  Plaintiffs' breach of fiduciary duty claim merely contains generalizations that the Bank acted with "reckless disregard" and asks for an award of punitive damages.  See Amended Complaint at 35-37, 43-44, 54-56.  Nowhere in the Second Amended Complaint do Plaintiffs allege any facts to support that the conduct of the Defendants with respect to Plaintiffs is "reprehensible" or in "blatant violation of law or policy."[8]  Thus, as the Court held in Reinke, Plaintiffs here have failed to demonstrate that they are entitled to punitive damages, and as such, their request for this relief does not contribute to the amount in controversy necessary to invoke federal jurisdiction.

      **3.**      ***Because Plaintiffs either lack standing to assert claims for injunctive relief, or, the injunctive relief requested is not recoverable or has no value, Plaintiffs cannot rely on this relief to reach the jurisdictional minimum.***

As a final element, Plaintiffs seek injunctive relief from this Court.  As with their claim for punitive damages, and as the Court recognized in Reinke, Plaintiffs' request for injunctive relief fails to help them achieve the jurisdictional minimum.  This is so because either the relief requested is simply not a proper request for injunctive relief, Plaintiffs lack standing to pursue such relief, or the injunctive relief requested has little or no value that contributes to the jurisdictional minimum.

      a.      Plaintiffs' request for injunctive relief has no value because the relief requested is not awardable as injunctive relief.

"An injunction is an equitable remedy shaped to right an ongoing wrong … and will not issue if it cannot serve a proper remedial purpose."  Kohl v. Woodhaven Learning Center, 865 F.2d 930, 934 (8th Cir. 1989) (reversing the district court's injunction because such relief would

---

[8]      In fact, at a hearing before this Court on February 8, 2005, Plaintiffs' counsel admitted to this Court that Defendants did nothing illegal in the exchange of common trust funds for investments in affiliated mutual funds.  See Ex. 5 at 5 (Hearing Transcript).  Plaintiffs' counsel stated, "we're not suggesting, Your Honor, that those conversions standing on their own are illegal.  They are indeed permitted under state law in I think most states but rather that in the manner in which the bank carried these conversions out … ."  Id.

serve no remedial purpose for the plaintiff). Such equitable relief is designed to restore the *status quo* and to make whole again someone whose rights have been violated. In this instance, the relief requested by Plaintiffs as "injunctive relief" achieves neither of these fundamental purposes and, therefore cannot be awarded by this Court.

In the Second Amended Complaint, Plaintiffs seek the following "injunctive relief":

- "an entry of judgment enjoining the Bank from opposing any petition filed by any member of the Class or Missouri or California Sub-Classes seeking the removal of the Bank as corporate fiduciary and requiring the Bank to pay for all legal fees and expenses incident thereto including its own." <u>See</u> Prayer for Relief in the Second Amended Complaint at 57.

- "injunctive relief providing for the ***possible*** removal of the Bank as fiduciary for all fiduciary accounts in which members of the Class are beneficiaries." (emphasis added) <u>See</u> Second Amended Complaint ¶ 33.

- "injunctive relief providing for ***new*** procedures and practices at the Bank which put the interests of plaintiffs Arnold, Scharff and the members of the Class ahead of those of BAC and the Bank and which otherwise address the ongoing conflicts of interest forced by the Bank in the investment of fiduciary assets." (emphasis added) <u>See</u> Second Amended Complaint ¶ 33.

In essence, Plaintiffs are asking this Court to prohibit the Bank from opposing any future (and as of now, unknown) petition for its removal as trustee, as well as to provide for ***new*** procedures and practices at the Bank. This requested "injunctive relief" is simply not injunctive relief at all because it cannot restore the Plaintiffs to the *status quo*. Thus, these claims for "injunctive relief" are not recoverable and Plaintiffs cannot rely on such relief to confer jurisdiction or satisfy the amount in controversy requirement.

        b.      Assuming the injunctive relief requested is recoverable,
           <u>Plaintiffs lack standing to pursue injunctive relief.</u>

"Whether a plaintiff has standing to sue 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" (citation omitted) <u>McClain v. Am. Econ. Ins. Co.</u>, 424 F.3d 728 (8th Cir. 2005). If a plaintiff lacks standing, the district court has no subject matter jurisdiction; therefore, a standing argument implicates Federal Rule of Civil Procedure 12(b)(1). <u>Faibisch v. University of Minnesota</u>, 304 F.3d 797 (8th Cir. 2002). The

plaintiff bears the burden to establish each and every element of standing.  Smith v. St. Louis Housing Auth., 132 F.Supp. 2d 780, 783 (E.D. Mo. 2001).

As this Court recognized in the Reinke case, the three-prong analysis for standing "requires an injury in fact that is (a) concrete and particularized, and (b) "actual or imminent; a causal connection between the injury and the challenged action; and the likelihood, not mere speculation that a favorable decision will redress the injury."  See Reinke, 2005 WL 3454428, at *4 (citing Smith, 132 F. Supp.2d 780, 783); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992) (injury may not be conjectural or hypothetical).

Initially, as to Plaintiffs Scharff and Kutten, the same analysis that this Court utilized in ruling that Plaintiffs Reinke and Cohen lacked standing to request injunctive relief because they were no longer affiliated with the Bank applies here.  Although not pled, there is no dispute that Plaintiffs Kutten and Scharff are no longer customers of the Bank, leaving in 2003 and 2005, respectively.  Thus, Plaintiffs Scharff and Kutten lack standing to seek any injunctive relief here.

Next, as to Plaintiff Arnold, although she remains a Bank customer, she still lacks standing to seek her requested "injunctive relief."  First, she cannot establish an "injury in fact." In the context of class actions, a named plaintiff must allege a distinct and palpable injury to herself, even if it is an injury allegedly shared by a large class of other possible litigants.  Warth v. Seldin, 422 U.S. 490, 501 (1975) (a federal court's jurisdiction can be invoked only when a plaintiff's complaint sufficiently alleges that he or she has personally suffered some threatened or actual injury resulting from the conduct at issue in the litigation);  see also Young America Corp. v. Affiliated Computer Services (ACS), 424 F.3d 840 (8th Cir. 2005).  In the context of injunctive relief, a plaintiff must show that she "faces a threat of on-going or future harm."  Smith, 132 F.Supp. 2d at 784; Park v. Forest Service of the United States, 205 F.3d 1034, 1037 (8th Cir. 2000) (holding that plaintiff failed to sufficiently allege a threat of ongoing or future harm).  A plaintiff must be "seeking prospective relief against future conduct of defendants who caused injury in the past [and] *must show that she faces 'a real and immediate threat that she would again suffer similar injury in the future.'"*  Mosby v. Ligon, 418 F.3d 927, 933 (8th Cir. 2005)

(affirming motion to dismiss because the plaintiff lacked standing) (quoting Park, 205 F.3d 1034, 1037 (8th Cir. 2000)) (emphasis added).

Plaintiff Arnold, in essence, is asking this Court for prospective injunctive relief prohibiting the Bank from opposing any future petitions for its removal as corporate fiduciary by unknown parties. Also, Plaintiff Arnold seeks injunctive relief imposing unknown "*new* procedures and practices" on the Bank. Neither of these provides the injury in fact necessary for standing, however. Indeed, Plaintiff Arnold has failed to specifically or generally allege any actual or imminent future injury that will befall her in this regard, and thus, she fails to satisfy the first prerequisite of standing. See Burton v. Central Interstate Low-Level Radioactive Waste Compact Com'n, 23 F.3d 208, 210 (8th Cir. 1994) (affirming motion to dismiss for lack of Article III standing where no effort was made to connect challenged bylaws and rules to any real injuries that were suffered or will be suffered). And, she plainly lacks an injury in fact when she requests the "*possible* removal of the Bank as fiduciary," where she has *never* petitioned the Bank for its removal as trustee of the Crowley Trust.

Likewise, Plaintiff Arnold cannot establish causation or redressability necessary to support her standing to seek the injunctive relief she requests. There is simply no causal connection between another's petition to remove the Bank as trustee and harm to Plaintiff Arnold. Similarly, it is difficult to see how the Court is offering redress to Plaintiff Arnold by involving itself in the trustee decision of another trust, or even if it could do so, writing and mandating unknown and unspecified policies at the Bank. The remaining two elements of standing, therefore, cannot be found. See Hall v. LHACO, Inc., 140 F.3d 1190, 1196 (8th Cir.1998) ("it must be more than merely speculative that the relief requested would have any effect to redress the harm to the plaintiff.")

      c.     Even if any of the Plaintiffs have standing and the requested relief is awardable, any value attributable to that relief is insufficient to get the claims over the jurisdictional minimum.

As this Court correctly held in Reinke, the standard for measuring the value of injunctive damages "requires the district court to rely solely on the plaintiff's viewpoint in meeting the

requisite amount." <u>Smith v. American States Preferred Ins. Co.</u>, 249 F.3d 812, 813 (8th Cir. 2001) (citations omitted).  In this case, by valuing the requested injunctive relief from any of the Plaintiffs' perspective, the value would be far less than the required amount in controversy.

First, as outlined above, Plaintiffs Scharff and Kutten are no longer customers of the Bank.  Thus, they cannot benefit from any sort of injunctive relief and thus, it adds nothing to the amount in controversy.  Second, even if Plaintiff Arnold has standing to pursue the injunctive relief requested, she has failed to articulate any real or tangible way in which the requested injunctive relief will benefit her as a current customer of the Bank so as to have value.  This Court has held that a plaintiff cannot rely on any "intangible benefit" from injunctive relief.  <u>See</u> <u>J.C. Corporate Management v. Resource Bank</u>, No. 4:05CV00716 (ERW), 2005 WL 2206086 at *4 (Sept. 12, 2005 E.D. Mo.).  Thus, even assuming, *arguendo*, that Plaintiff Arnold had standing and would somehow benefit from the injunctive relief requested, there is simply no way that the value of such injunctive relief would remotely approach the jurisdictional minimum.[9]

## **CONCLUSION**

For the foregoing reasons, the Second Amended Complaint should be dismissed for failing to meet the subject matter jurisdictional requirements of 28 U.S.C. § 1332(a)(1).

DATED:  January 30, 2006

<div style="margin-left:40%">

BRYAN CAVE LLP

By

  /s/ Edward L. Dowd, Jr.        
Edward L. Dowd, Jr.
Jeffrey S. Russell
Darci Madden
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO  63102
Telephone:  314.259.2000
Fascimile: 314.259.2020

</div>

---

9       Giving all credence to Plaintiff Arnold's claims for actual damages, she has less than $5,000 in actual damages.  <u>See</u> Ex. 3.

15

Gregory B. Jordan
Mary J. Hackett
Christopher J. Soller
Sharon L. Rusnak
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone:  412.288.3131
Facsimile:  412.288.3063

Attorneys for Defendants Bank of
America, N.A. and
Bank of America Corporation

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 30th day of

January, 2006 upon the following counsel of record by the manner indicated below:

> Steven M. Hamburg, Esq.
> Holly M. McIntyre, Esq.
> Summers, Compton, Wells & Hamburg, P.C.
> 8909 Ladue Road
> St. Louis, MO  63124
>
> *Via the Court's Electronic Filing System*
>
> Richard D. Greenfield, Esq.
> Greenfield & Goodman LLC
> 7426 Tour Drive
> Easton, MD  21601
>
> *Via the Court's Electronic Filing System*
>
> Hector G. Gancedo, Esq.
> Gancedo & Nieves LLP
> 144 W. Colorado Boulevard
> Pasadena, CA  91105
>
> *Via the Court's Electronic Filing System*

/s/ Edward L. Dowd, Jr.
Counsel for Defendant

January 30, 2006